UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRYSTAL HOLMES,<br><br>  Petitioner,<br><br>  v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY, [1]<br><br>  Defendant. | No. 1:23-cv-01279-WBS-SKO<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED AND THE ACTION BE REMANDED TO THE COMMISSIONER FOR FURTHER PROCEEDINGS**<br><br>**14-DAY DEADLINE**<br><br>(Doc. 1) |

## I.  INTRODUCTION

Plaintiff Chrystal Holmes ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II and Title XVI of the Social Security Act (the "Act"). (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

Judge.[2] For the reasons set forth below, the undersigned recommends the Court grant Plaintiff's motion for summary judgment and remand this action to the Commissioner for further proceedings.

## II. BACKGROUND

Plaintiff was born on November 28, 1979. (Administrative Record ("AR") 338). She filed her claim for under for social security disability insurance ("SSDI") and supplemental security income ("SSI") benefits on August 5, 2020, alleging a disability onset of date of March 19, 2019. (AR 19, 338–41, 342–51). In her application, Plaintiff alleged she cannot work based on her "neck, shoulder and back" and her high blood pressure. (AR 366). Plaintiff has a high school education and a Certified Nursing Assistant certification. (AR 367). She previously worked in a care facility. (AR 367).

### A. Relevant Evidence of Record[3]

Plaintiff has been treated for cervical and lumbar degenerative disc disease, degenerative joint disease of the left shoulder and bilateral carpal tunnel syndrome. (AR 25). Plaintiff received chiropractic care for her shoulder pain, but discontinued her treatment after twelve sessions. (AR 599). Her records indicate she occasionally has reported right shoulder pain (AR 665, 668, 675), and while her healthcare providers ordered X-rays (AR 655, 675), there are no results in the record. Plaintiff is considered medically obese, and has been diagnosed with hypertension which is treated with the medication Lisinopril. (AR 483, 801).

Plaintiff testified to extreme limitations regarding her arm, shoulder, and back pain. (*See* AR 45-51). She reported that her carpal tunnel and the corresponding pain in her arms, back and shoulder prevents her from driving (AR 42-43). She reported that she cannot lift any weight with either arm (AR 45), and that she requires a walker. (AR 46). She testified that her daughter helps her bathe and prepares her food. (AR 50). Because her pain disrupts her sleep, she naps twice daily for an hour at a time. (AR 48).

---

[2] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.
[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

**B.     The ALJ's Decision**

Plaintiff filed a claim for DIB on August 5, 2020, alleging a disability onset date of March 19, 2019. (AR 19, 338–41, 342–51). The Commissioner denied Plaintiff's application initially on September 30, 2020, and again upon reconsideration on January 14, 2021. (AR 19). Plaintiff requested a hearing before an Administrative Law Judge (an "ALJ") on January 20, 2021, and the parties attended a hearing on November 15, 2022. (AR 19). In a decision dated June 23, 2022, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 19-30).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 19, 2020 (step one). (AR 21). At step two, the ALJ found Plaintiff suffers from the following severe impairments: cervical and lumbar degenerative disc disease, degenerative joint disease of the left shoulder (20 CFR 404.1520(c) and bilateral carpal tunnel syndrome 416.920(c)). (AR 21). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 23).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b) with the following additional limitations:

> she can occasionally climb ramps and stairs but cannot climb ladders or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can frequently reach in all directions with the bilateral upper extremities and can frequently handle and finger with the bilateral upper extremities. The claimant

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

> must avoid concentrated exposure to workplace hazards such as unprotected heights and moving mechanical parts.

(AR 25).

At steps four and five, the ALJ found that Plaintiff could not perform any past relevant work and the transferability of job skills was not material because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (AR 28). The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified at Plaintiff's previous hearing that she could perform the following jobs: Mail Clerk (Dictionary of Occupational Titles ("DOT") 209.687-026)); Office Helper (DOT 239.567-010); and Folder (DOT 369.687-018) (AR 29). The ALJ concluded Plaintiff was not disabled under the Social Security Act. (AR 29-30).

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 20, 2023. (AR 1). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.  LEGAL STANDARDS

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has

4

provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th

Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ offered insufficient reasons to discount Plaintiff's subjective complaints; and (2) the RFC does not account for all Plaintiff's impairments, and it is not supported by substantial evidence.[5] For the reasons set forth below, the Court finds that the ALJ erred by failing to provide specific, clear and convincing reasons to discount Plaintiff's subjective complaints and the error was not harmless. The undersigned recommends the Court

---

[5] Plaintiff argued in her opening brief that the ALJ erred in two other respects. (See Doc. 12-1 at 9-9). Plaintiff, however, later retracted these arguments (Doc. 18 at 1-2) ("Additionally, the Plaintiff, in agreement with the Defendant, has withdrawn her arguments under section B.") Accordingly, the undersigned has not addressed these additional arguments.

6

remand on that basis. Because this matter is before the Court for its findings and recommendations, however, the undersigned will address both of Plaintiff's allegations of error.

**A.     The ALJ Improperly Discounted Plaintiff's Subjective Complaints**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show their impairment "could reasonably be expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this

7

1  standard; the ALJ "'must identify what testimony is not credible and what evidence undermines
2  the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting
3  *Lester*, 81 F.3d at 834).

**2. Analysis**

Because the ALJ found Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms" (AR 26), the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591. Plaintiff testified that her left shoulder causes her the most pain (AR 45), but she cannot lift weight with either arm, and her arms are either numb or have a "pins and needles" sensation. (AR 25, 42-43). Plaintiff testified that her neck and lower back are so stiff and cause her so much pain "that I will literally fall if I don't have . . . that extra help which is the walker that I use." (AR 46). She also testified that she is often nauseous (AR 47), and she naps once or twice per day for an hour at a time. (AR 26, 48). The ALJ found that Plaintiff's testimony was undermined by (1) the relevant medical evidence (AR 26) and (2) statements by Plaintiff that were otherwise inconsistent with the record. (AR 27).

Plaintiff first contends the ALJ provided "just a summary of the evidence and not one word about how that evidence supports or discredits Ms. Holmes' allegations," and that the ALJ "massively discredited Ms. Holmes's testimony regarding pain without providing clear and convincing reasons." (Doc. 12-1 at 4). In *Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020) and its progeny, the Ninth Circuit has held ALJs may not discredit a claimant's subjective complaints with only "boilerplate" statements, and they must do more than provide a summary of the medical evidence to support their adverse credibility findings. *Lambert*, 980 F.3d at 1277-78. The analysis, however, does not have to be "extensive," so long as it "provide[s] some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)). "Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Id.* at 1277 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)). Rather,

8

"[e]ven when an agency explains its decision with less than ideal clarity, [the court] must uphold it if the agency's path may reasonably be discerned." *Molina v. Astrue*, 674F.3d 110, 1121 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a).

Here, the ALJ provided a summary of the relevant medical evidence without establishing how it undermines Plaintiff's testimony, specifically regarding her arm pain (and her inability to lift any weight) and her need to rest during the day. The ALJ's decision includes five paragraphs summarizing Plaintiff's medical conditions, but the ALJ includes no references as to how these medical records undermine Plaintiff's subjective complaints. Instead, the ALJ provides the following conclusion:

> To summarize, this medical evidence necessitates reductions to the claimant's residual functional capacity. Neck, back and shoulder impairments support the reductions to light exertion, reduced climbing and postural movements, and reduced exposure to potential workplace hazards. Her bilateral shoulder problems and bilateral carpal tunnel syndrome necessitated the reductions from constant reaching, handling, and fingering to no more than frequent reaching, handling, and fingering.

(AR 27). The ALJ's summary does not indicate that the medical evidence undermines Plaintiff's subjective complaints. This discussion does not allow the Court to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence because it is unclear *how* the ALJ used this medical evidence to discount Plaintiff's subjective complaints. *Treichler.*, 775 F.3d at 1098.

Defendant contends the ALJ's assessment was supported by Plaintiff's clinical exams, as some records show Plaintiff's left shoulder strength was limited (4/5), but her reflexes and gait were normal. (Doc. 17 at 8, citing AR 590, 621–23). However, the ALJ does not state that Plaintiff's clinical exams undermine her subjective complaints, and "[w]e review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Similarly, Defendant contends that Plaintiff engaged in limited chiropractic care before "voluntarily discontinuing" treatment, and this was a valid consideration in assessing Plaintiff's

symptoms. The ALJ again failed to explain that Plaintiff's decision to cease treatment led the ALJ to find her uncredible. Although this may be a reason for an ALJ to discredit a claimant's testimony, the ALJ is still required to connect specific evidence to the testimony it undercuts. *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated"), *Lambert*, 980 F.3d at 1277-78. Without more, the ALJ's summary of medical evidence is the type of analysis *Lambert* prohibits, and this alone cannot constitute clear and convincing evidence sufficient to reject Plaintiff's subjective complaints. *See Brown-Hunter*, 806 F.3d at 494–95 ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [claimant's] pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions."). While the Ninth Circuit does not "require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits," the ALJ must do more than what was done here. *Lambert,* 980 F.3d at 1277 (9th Cir. 2020).

The ALJ also noted that "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, there are inconsistencies." (AR 27). In support of this conclusion, the ALJ stated:

> The claimant testified that she could walk no farther within her home than to her bathroom, and that she needs a walker to do that (hearing testimony). However, there are no mentions of the medical necessity of a cane or a walker in the entire medical record. The records indicate the claimant walks with a steady gait (17F/13, 26) and affirmatively states that there is no use of an assistive device for ambulation (21F/3, 8, 12, 17, 22, 27; 24F/3, 8, 13, 17, 22, 28, 32, 37, 41, 45, 49, 53; 25F/11, 15, 22).
>
> She also alleges frequent dizziness and nausea (hearing testimony). However, visit notes from 2021 indicate that the claimant denies dizziness (20F/2, 5, 8; 21F/3, 8, 22, 27; 23F/2, 9, 16; 24F/3, 8. 22, 28; 25F/22), and nausea (21F/3, 8, 12, 17, 22, 27; 24F/3, 8, 12, 17, 22, 27, 32). There are no instances of the claimant reporting fainting or syncope to her providers, and there is one denial of syncope (4F/33). Thus, the claimant's allegations are inconsistent because she reports the opposite

(no dizziness, nausea, etc.) to her providers.

(AR 27). General inconsistent statements—even those unrelated to the claimant's symptoms—can provide a permissible basis to discredit a claimant's lay testimony. *See Thomas*, 278 F.3d at 958–59 (inconsistencies in a claimant's testimony may be used to discredit subjective complaints); *Light*, 119 F.3d at 792 ("An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony."); *see also Smolen*, 80 F.3d at 1284 (ALJ may rely on ordinary techniques of credibility evaluation including prior inconsistent statements or statements that are less-than-candid); *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (1989) (an ALJ can reject pain testimony based on contradictions in plaintiff's testimony).

The ALJ's analysis provides at most a sufficient reason to discount Plaintiff's testimony related to her ability to walk, and her dizziness and nausea, (*see Thomas*, 278 F.3d at 958–59), but the Court finds this is not a specific, clear and convincing reason to discount Plaintiff's subjective complaints related to her arm pain, her inability to lift any weight, or her need to rest intermittently throughout the day. "Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work." *Smart v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). Although the ALJ may have found these inconsistent statements to undercut Plaintiff's credibility overall (and not just as it related to those specific allegations), the ALJ did not set forth this conclusion. Because this Court's review is limited to the rationale provided by the ALJ, the *post-hoc* rationalizations and inferences advanced by the Acting Commissioner cannot justify the ALJ's rejection of Plaintiff's subjective testimony. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."). Accordingly, the ALJ has failed to provide specific, clear and convincing reasons to discount Plaintiff's complaints.

### 3. The ALJ's Error Was Not Harmless

The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, the Court "will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038 (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'") (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "The nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

The record establishes that the ALJ's error was not harmless. If the ALJ had credited Plaintiff's statements, the disability determination may have changed, especially given that Plaintiff alleged significant limitations, including an inability to lift any weight with her arms (AR 45). Thus, the error was not "inconsequential to the ultimate nondisability determination," *Molina*, 674 F.3d at 1115, and the Court finds it was not harmless.

### 4. The ALJ's Error Warrants Remand for Further Proceedings

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099

1  (citations omitted).  The Ninth Circuit recognized a limited exception to this typical course where
2  courts "remand[] for an award of benefits instead of further proceedings."  *Id.* at 1100–01
3  (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the
4  'credit-as-true' rule").  In determining whether to apply this exception to the "ordinary remand
5  rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2)
6  "there are outstanding issues that must be resolved before a determination of disability can be
7  made;" and (3) "further administrative proceedings would be useful."  *Id.* at 1101 (citations
8  omitted).  As to the last inquiry, additional "[a]dministrative proceedings are generally useful
9  where the record has not been fully developed, there is a need to resolve conflicts and ambiguities,
10 or the presentation of further evidence . . . may well prove enlightening in light of the passage of
11 time."  *Id.* (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional
12 evidence or simply to award benefits is in [the court's] discretion."  *Swenson*, 876 F.2d at 689
13 (citation omitted).

14       The undersigned finds that the "credit-as-true" exception to the "ordinary remand rule" is
15 inapplicable in this case because additional administrative proceedings would be useful.  *See, e.g.,*
16 *McGee o/b/o J.S.F*, 2022 WL 4123980, at *6 (remanding for further proceedings including a de
17 novo hearing and new decision).  Upon remand, the ALJ is to consider all of the relevant medical
18 evidence, including Plaintiff's subjective complaints, in assessing Plaintiff's RFC.  If the ALJ
19 chooses to discount these complaints, the ALJ must provide specific, clear and convincing
20 reasons for choosing to do so.

21 **B.      The ALJ Did Not Otherwise Err**

22       Plaintiff makes several other arguments that the ALJ failed to account for Plaintiff's
23 impairments when formulating her RFC, and the Court will address them briefly.  (*See* Doc. 12 at
24 8-11).

25       **1.      Legal Standard**

26       An RFC is "an assessment of an individual's ability to do sustained work-related physical
27 and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling
28 ("SSR") 96-8p, 1996 WL 374184, at *1 (1996); *see also* 20 C.F.R. § 416.945(a).  It reflects the

1  most that a claimant can do despite their limitations.  SSR 96-8p, 1996 WL 374184, at *1.  In
2  formulating the RFC, the ALJ must account for all the claimant's medically determinable
3  impairments, including those that are not "severe," and evaluate "all of the relevant medical and
4  other evidence."  20 C.F.R. § 416.945(a); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574
5  F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's
6  limitations is defective").  Therefore, an ALJ errs when providing an incomplete RFC ignoring
7  "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

8        An RFC assessment is ultimately an administrative finding reserved to the Commissioner.
9  20 C.F.R. § 416.946.   The RFC does not need to directly correspond to a specific medical
10 opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a
11 succinct RFC."  *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see
12 also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's
13 responsibility to weigh conflicting medical evidence and translate accepted medical opinions into
14 "concrete restrictions").  The ALJ's RFC assessment should be affirmed if the ALJ has applied
15 the proper legal standard and their decision is supported by substantial evidence in the record.
16 *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

17        **2.**    **Analysis**

18        Plaintiff first contends that the ALJ did not properly consider her obesity when
19 formulating her RFC, but she does not contend her obesity amounts to a severe impairment.
20 Instead, Plaintiff argues "[t]his failure to perform any individualized analysis of the impact of
21 obesity on Ms. Holmes residual functional capacity is outcome determinative because the ALJ
22 Opinion admits obesity is fairly in issue and if it creates any further limitation, which it likely
23 does, then the further limitation must have been presented to the VE to assess whether any work
24 is available."  (Doc. 12-1 at 8-9).  As Defendant notes, Plaintiff fails to suggest what other
25 limitations, if any, Plaintiff's obesity requires.  Without as much, Plaintiff has not established that
26 the ALJ harmfully erred.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir.
27 2009) ("[Plaintiff] does not explain his contention that the ALJ did not account for these
28 impairments . . . . [Plaintiff] does not detail what other physical limitations follow from the

evidence of his knee and should injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for [Plaintiff's] injuries in some unspecified way.").

Plaintiff also contends that "[t]he ALJ Opinion says it would consider limitations [from] these ailments it found credible but technically 'non-severe' within the technical SSA meaning of the word. [AR at 23]. The ALJ Opinion then never once considers or analyzes them." (Doc. 12-1 at 9). Plaintiff again fails to identify what limitations, if any, the non-severe impairments require. Further, the opinion specifically states that the ALJ considered all of Plaintiff's medically determinable impairments, both severe and non-severe. (AR 22). In sum, Plaintiff has failed to identify any specific limitations the ALJ failed to include, and she does not explain how the RFC ignores "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

Lastly, Plaintiff contends "[t]he ALJ Opinion here is much more problematic, skipping the analysis in every significant part of the decision, and should be remanded for this reason alone." (Doc. 12-1 at 10). To the extent that Plaintiff contends the ALJ failed to properly consider Plaintiff's subjective complaints, as noted above, the Court recommends remand for this reason. Plaintiff, however, has not advanced another argument, founded in law, to support the conclusion that the ALJ erred.

## V. FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Doc. 12) be GRANTED;

2. This matter be REMANDED for further proceedings consistent with this decision; and

3. The Clerk of the Court be DIRECTED to enter judgment in favor of Plaintiff Chrystal Holmes, and against Defendant Commissioner of Social Security, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen**

**(14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 28, 2024**            /s/ *Sheila K. Oberto*
                                                       UNITED STATES MAGISTRATE JUDGE